1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

JESUS CASTILLO, MARK KNOWLES, ALEX RODRIGUEZ, NICHOLAS JAMES THROLSON, R.S., KIMBERLY SCOTT, ROBIN WARBEY, DANIEL SMITH, MATT GROVES, VERN DEOCHOA, TYRONE WASHINGTON, individually, and on behalf of those similarly situated,

Plaintiffs,

v.

COSTCO WHOLESALE CORPORATION, a Washington corporation,

Defendant.

NO. 2:23-cv-01548-JHC

**STIPULATED AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND ORDER**

11
12
13
14
15
16
17
18
19

The parties hereby stipulate to the following provisions regarding the discovery of

20

electronically stored information ("ESI") in this matter:

21

**A.    General Principles**

22
23

1.    An attorney's zealous representation of a client is not compromised by

24

conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation

25
26

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 1
Case No: 2:23-cv-01548-JHC

1
2

to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

3
4
5
6
7
8
9
10

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.   This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case.  The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

11

**B.      ESI Disclosures**

12
13

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

14
15
16
17
18
19
20
21
22
23
24

1.      <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control, and the likely custodial sources of the custodian's ESI (including, for example, hard drive, laptops, and mobile devices). If the requesting party determines that additional Custodians should be added, then the requesting party shall advise the producing party in writing of the proposed additional Custodians and the basis for the request. If the Parties have not agreed whether to add any Custodian within 15 days of the requesting party's request for any additional Custodians, the parties may bring the matter to the Court.

25
26

2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI. The parties will meet and confer regarding the search parameters and production format of data from structured data sources.

3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.      <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). The parties agree to take reasonable steps to preserve inaccessible data that is known to the preserving party and which is under the preserving party's custody or control until the parties meet and confer about whether such data shall be preserved.

## C.      ESI Discovery Procedures

1.      <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.      Prior to running searches:

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 3
Case No: 2:23-cv-01548-JHC

i.       The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The parties shall meet and confer in order to reach an agreement on the producing party's custodians, initial search terms, search strings, or queries and/or other methodology. To facilitate a good faith meet and confer, the producing party will provide a unique hit count (*i.e.*, documents that do not hit on other search terms or queries and that have been de-duped within the set) for each search term, search string, or query, and the parties will reach an agreement on the search terms, search strings, or queries to be used before the producing party produces documents hitting on those search terms, search strings, or queries.

ii.      If the requesting party believes, in good faith, that the custodians, search terms, search strings, or queries agreed to by the parties pursuant to Section C(2)(a) are insufficient, the producing party shall run a second set of search terms, search strings, or queries. The parties shall meet and confer in order to reach an agreement on the producing party's second set of search terms, search strings, or queries and/or other methodology. To facilitate a good faith meet and confer, the producing party will provide a unique hit count (*i.e.*, documents that do not hit on other search terms or queries, that have not been produced previously, and that have been de-duped within the set) for each additional search term, search string, or query, and the parties will reach an agreement on the search terms, search strings, or queries to be used before the producing party produces documents hitting on these additional search terms, search strings, or queries. Additional search terms, search strings, or queries, if any, must be provided by the requesting party within 30 (thirty) days of the producing party informing the receiving

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 4
Case No: 2:23-cv-01548-JHC

party that it has substantially completed the production of documents produced pursuant to C(2)(a)..

     iii.  The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

    b.  Known responsive ESI: ESI that is known to a party to be responsive to a discovery request or subject to disclosure under Federal Rule of Civil Procedure 26(a)(1)(A) may not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Agreement. Discrete folders or collections of documents that are identified by a custodian as likely to be responsive will be collected and preserved pursuant to standard business practices and processes that are reasonably designed to ensure all potentially responsive documents are identified and collected.

    c.  Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems

personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

      3.    <u>Format.</u>

      a.    Unless otherwise specified in a particular discovery request consistent with FRCP 34(b)(2)(D), the parties agree that ESI will be produced to the requesting party with searchable text, in a format described below. If a party serves a request specifying a particular form or forms in which electronically stored information is to be produced, this section will apply to the extent it is not inconsistent with the form specified in the request.

      b.    Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. If these files require redactions, they should be done on the native file.

      c.    Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

      d.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

      e.    The parties shall produce their information in the following format: Group IV single-page TIFF format (black and white, 300 dpi) and associated document-level text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 6
Case No: 2:23-cv-01548-JHC

f.      The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

g.      When processing ESI, Coordinated Universal Time (UTC) should be selected as the time zone.

h.      All productions shall be encrypted. Any production made via FTP should be provided as compressed archives (ZIP or RAR files). Productions over 5GB may be produced via FTP by splitting the compressed archives into 5GB or less or on encrypted physical media, such as hard drive or flash drive.

i.      Responsive spreadsheets (e.g., Excel files), audio files, and video files shall be produced in native format. The parties will meet and confer to discuss requests for the production of other files in native format on a case-by-case basis. All native documents will be accompanied by single-page TIFF files that are sequentially Bates numbered and include any applicable confidentiality language pursuant to any Protective Order entered in this litigation, companion searchable text files (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and companion data load files for commonly-used e-discovery software. The native file name shall include the accompanying image files' first Bates Number. To the extent that documents produced in native format cannot be rendered or viewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues that may arise with respect to obtaining access to any such software or operating manuals.

(i)      If the ESI is not amenable to being imaged, it shall be produced only in its original, native, unaltered format, along with a spacer image sheet that: (1) indicates that the file was produced as a native file; and (2) is marked with a Bates production number. That Bates production number will be the production number of the corresponding native file. The native file name shall include this Bates production number.

(ii)      If production of a particular document as a native format file would result in the disclosure of information protected by the attorney-client privilege, the work-product doctrine, or that is otherwise protected from discovery, the producing party may object to its production as a native file and produce the document at issue with redactions in sequentially Bates numbered, static image format (with companion text and load files as described above). Wherever possible, the remainder of the document should be produced in native (for example, Excel spreadsheet portions that need not be redacted).

j.      All e-mails and other documents not being produced in native format should be produced as single-page TIFF files that are sequentially Bates numbered and include any applicable confidentiality language pursuant to any Protective Order entered in this litigation, companion searchable text files (including electronically extracted text or, if electronically extracted text is unavailable, OCR text), and companion data load files for commonly-used e-discovery software.

k.      Non-standard electronic files. Non-standard electronic files include, but are not limited to, source code, transactional data, database files, audio and video files, and proprietary applications not publicly available. The producing party will take reasonable steps to produce documents from such sources in a reasonably usable format with appropriate

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 8
Case No: 2:23-cv-01548-JHC

metadata in line with how the information is kept in the usual course of business. If after reviewing the produced documents a receiving party raises a specific issue or concern about a produced document or data, the parties will meet and confer regarding whether an alternative form of production or additional metadata is necessary or appropriate.

4.      De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file along with a duplicate original file path field that tracks where the duplicate file(s) are located.

5.      Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

6.      Metadata fields. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: beg bates; end bates; beg attach; end attach; document type; attachment count; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path and duplicate original file path(s); page count; confidentiality designation; redacted; importance; production volume; conversation ID; date and time created, sent date, last modified date; received date; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7.     <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.     The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

1.      Deleted, slack, fragmented, or other data only accessible by forensics.

2.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.      On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.      Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

5.      Back-up data that are duplicative of data that are more accessible elsewhere.

6.      IT security logs.

7.      Data remaining from systems no longer in use that is unintelligible on the systems in use.

8.      Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.      Privilege**

1.      A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 11
Case No: 2:23-cv-01548-JHC

each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. A party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the claim of privilege in light of the metadata that is discernable and/or the information provided as the basis for the claim. Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery unless an earlier deadline is agreed to by the parties.

2.     Redactions need not be logged so long as the basis for the redaction is clear on the redacted document and, when the redaction is made on privilege grounds, the nature of the privilege asserted is noted on the face of the document. A party may not redact information on the basis that it believes such information to be irrelevant or non-responsive.

3.     A party that withholds any document entirely on the basis of privilege shall produce a Bates numbered placeholder page/slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." Slip sheets for withheld documents need be produced only for partially-privileged families, where the producing party asserts privilege over a portion but not all of the responsive documents in the family. Slip sheets need not be produced for fully privileged document families.

4.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

5.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

6.      Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d).  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

a.      Notification and Challenge: the production of any inadvertently produced privileged document will not be deemed to waive any privilege or work product protection either as to specific information in the inadvertently produced privileged document or as to any other information relating thereto or on the same or related subject matters. A producing party claiming production of any inadvertently produced privileged document shall promptly notify any and all receiving parties. When a producing party gives notice to receiving parties that any inadvertently produced privileged document is subject to a claim of privileged or other

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 13
Case No: 2:23-cv-01548-JHC

protection, the obligations of the receiving parties are those set forth in Federal Rules of Civil Procedure 26(b)(5)(B).

b.      The producing party claiming privilege or other protections for inadvertently produced privileged document must then promptly provide a privilege log for the inadvertently produced privileged document pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the applicable local rules, and the Stipulated ESI Protocol and either a new copy of the material (utilizing the same Bates number(s) as the original material) with the privileged or protected material redacted or a placeholder page/slip sheet utilizing the same Bates number(s) as the original matter and stating "Document Withheld on the Basis of Privilege."

c.      While it remains the burden of the producing party to take reasonable measures to ensure that privileged documents are not produced and to monitor its own productions, in the event that a receiving party discovers a document that a reasonable person would understand to be an inadvertently produced privileged document, the receiving party shall promptly notify the producing party of what it believes to be the inadvertently produced privileged document; sequester the specified information and any copies it has; and refrain from using or disclosing the information until the claim is resolved. However, no receiving party will be found in violation of this Order and the Stipulated ESI Protocol for failing to initially identify an inadvertently produced privileged document. Nothing in the foregoing sentence shall be read to release counsel from their obligations under the applicable rules of professional conduct. The producing party must retain a copy of any inadvertently produced privileged document until the resolution or termination of this case, including any appeals. If a producing party is notified of potentially an inadvertently produced privileged document, then parties shall follow the procedure set out in 6(a)-6(b).

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 14
Case No: 2:23-cv-01548-JHC

d.      In any motion relating to privileged claims over an inadvertently produced privileged document, the parties may discuss the contents of such materials in the motion, and may request that the designating party submit a copy of the document(s) in question to the Court for in camera review.

If, during a deposition, a producing party claims that a document being used in the deposition (e.g., marked as an exhibit, shown to the witness, or made the subject of examination) contains material that is subject to the attorney-client privilege, the attorney work product doctrine, or other protection, the producing party may (a) allow the document to be used during the deposition without waiver of any claim of privilege or other protection; (b) instruct the witness not to answer questions concerning the parts of the document containing privileged or protected material; or (c) object to the use of the document at the deposition to the extent the entire document is privileged or protected, in which case no testimony may be taken relating to the document during the deposition until the matter is resolved by agreement or by the court. If the producing party allows the examination concerning the document to proceed consistent with this paragraph, all parties shall sequester all copies of the inadvertently produced document and refrain from further use or disclosure of the document until the claim is resolved. As to any testimony subject to a claim of privileged or other protection, the producing party shall within thirty (30) days after receiving the transcript of the deposition serve a notice pursuant to paragraph 6(a), after which time the parties shall follow the procedures set forth in paragraphs 6(b)-6(d). Pending determination of the dispute, all parties with access to the deposition transcript shall treat the relevant testimony in accordance with Federal Rules of Civil Procedure 26(b)(5)(B).

1        e.    If a receiving party uses produced material in a brief or at a hearing, and the

2    producing party has not served a notice pursuant to paragraph 6(a) in advance of the briefing

3    event or hearing, the producing party shall promptly serve a notice pursuant to paragraph 6(a)..

4    Thereafter, the procedures set forth in paragraphs 6(b)-6(d) shall apply.

5      DATED:  September 25, 2024

6                                   **TOUSLEY BRAIN STEPHENS PLLC**

7                                   By: *s/ Kim D. Stephens, P.S.*
                               Kim D. Stephens, P.S., WSBA #11984

8                                   By: *s/ Rebecca L. Solomon*
                               Rebecca L. Solomon, WSBA #51520

9                                   1200 Fifth Avenue, Suite 1700

10                                  Seattle, WA 98101
                               Telephone: (206) 682-5600

11                                  Facsimile: (206) 682-2992
                               kstephens@tousley.com

12                                  rsolomon@tousley.com

13                                  **ZIMMERMAN REED LLP**

14                                  By: *s/ Hart L. Robinovitch*
                               Hart L. Robinovitch*

15                                  Ryan J. Ellersick, WSBA # 43346
                               14648 North Scottsdale Road, Suite 130

16                                  Scottsdale, AZ 85254
                               Telephone: (480) 348-6400

17                                  hart.robinovitch@zimmreed.com
                               ryan.ellersick@zimmreed.com

18                                  *Interim Co-Lead Counsel*

19                                  **MILBERG COLEMAN BRYSON**

20                                  **PHILLIPS**
                               **GROSSMAN, PLLC**

21                                  Gary M. Klinger*

22                                  227 W. Monroe Street, Suite 2100
                               Chicago, IL 60606

23                                  Telephone: (866) 252-0878
                               gklinger@milberg.com

24                                  Glen L. Abramson*

25                                  Alexandra M. Honeycutt*
                               800 S. Gay Street, Suite 1100

26                                  Knoxville, TN 37929

| | |
|---|---|
| 1 | Telephone: (866) 252-0878 |
| | gabramson@milberg.com |
| 2 | ahoneycutt@milberg.com |
| 3 | **BARRACK RODOS & BACINE** |
| | Stephen R. Basser* |
| 4 | sbasser@barrack.com |
| | Samuel M. Ward* |
| 5 | sward@barrack.com |
| | 600 West Broadway, Suite 900 |
| 6 | San Diego, CA 92101 |
| | Telephone: (619) 230-0800 |
| 7 | |
| | **LEVI & KORSINSKY, LLP** |
| 8 | Mark S. Reich* |
| | Courtney Maccarone* |
| 9 | mreich@zlk.com |
| | cmaccarone@zlk.com |
| 10 | 33 Whitehall Street, 17th Floor |
| | New York, NY 10004 |
| 11 | Telephone: 212-363-7500 |
| | Fax: 212-363-7171 |
| 12 | |
| | *Plaintiff's Steering Committee* |
| 13 | |
| | *Attorneys for Plaintiffs and the Putative Class* |
| 14 | DATED:  September 25, 2024 |
| | **HOLLAND & KNIGHT LLP** |
| 15 | By: _s/ Kristin M. Asai_ |
| | Kristin M. Asai, WSBA #49511 |
| 16 | Kristin.Asai@hklaw.com |
| | 601 SW Second Avenue, Suite 1800 |
| 17 | Portland, OR 97204 |
| | Telephone: 503.243.2300 |
| 18 | |
| 19 | By: _s/ Ashley L. Shively_ |
| | Ashley L. Shively |
| 20 | By: _s/ Rebecca G. Durham_ |
| | Rebecca G. Durham |
| 21 | Ashley.Shively@hklaw.com |
| | Rebecca.Durham@hklaw.com |
| 22 | 560 Mission Street, Suite 1900 |
| | San Francisco, CA 94105 |
| 23 | Telephone: 415.743.6900 |
| 24 | |
| | *Counsel for Defendant Costco Wholesale* |
| 25 | *Corporation* |
| 26 | |

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 17
Case No: 2:23-cv-01548-JHC

1

**ORDER**

2

Based on the foregoing, IT IS SO ORDERED.

3

4

DATED: September 25, 2024.

5

6
_John H. Chun_
John H. Chun
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STIPULATED AGREEMENT REGARDING DISCOVERY
OF ELECTRONICALLY STORED INFORMATION AND
ORDER- 18
Case No: 2:23-cv-01548-JHC